UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEBORAH ALLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:14-CV-1839-TAB-JMS |
| ) | |
| CAROLYN W. COLVIN, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

**I.   Introduction**

This is an appeal from the Administrative Law Judge's denial of Social Security benefits to Plaintiff Deborah Allen. The ALJ's decision was thorough and supported with sound reasoning. While a number of issues were raised on appeal, a review of the record reveals that the primary issues are (1) whether substantial evidence supports the ALJ's credibility finding and (2) whether substantial evidence supports the ALJ's step four finding. The remaining issues will be discussed briefly. Because the Court finds no reversible error, the ALJ's opinion is affirmed.

**II.   Procedural Background**

Allen filed a claim for a period of disability and disability insurance benefits on October 7, 2011, alleging a disability starting January 1, 2009. Allen's application was denied initially on November 29, 2011, and upon reconsideration on April 5, 2012. An ALJ held a hearing June 11, 2013, and in a decision issued July 26, 2013, the ALJ concluded that Allen was not disabled.

The ALJ's decision concluded (1) at step one, that Allen had not engaged in substantial gainful activity, and (2) at step two, that Allen's diabetes mellitus, degenerative joint disease of the knees and right wrist, disorders of the spine, and obesity were severe. At (3) step three, the


ALJ found that Allen's impairments did not meet or equal the relevant listings, and (4) at step four, the ALJ found Allen capable of performing:

> Sedentary work […] except: lifting, carrying, pushing, or pulling ten pounds occasionally and five pounds frequently; standing and walking for two hours in an eight hour work day; sitting for six hours in an eight hour work day; occasionally stooping, balancing, crouching, crawling, kneeling, and climbing; and frequently handling and fingering with the right upper extremity

[Filing No. 14-2, at ECF p. 20.]  A Vocational Expert testified at the hearing that given these restrictions, Allen is capable of performing past relevant work as a social worker "generally." [Filing No. 14-2, at ECF p. 25.]  The ALJ relied on this testimony in concluding Allen was not disabled.  [Filing No. 14-2, at ECF p. 25.]  The Appeals Council denied Allen's request for review [Filing No. 14-2, at ECF p. 2-4], making the ALJ's decision final.  This appeal followed.  The Court held oral argument on October 16, 2015.                      .

### III.   Standard of Review

The Court must uphold the ALJ's decision if substantial evidence supports his findings. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).  "The substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003).  The ALJ is obligated to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.  *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).  If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected.  *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).  The ALJ, however, need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to his conclusion.  *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

**IV.  Discussion**

    *A.  The ALJ's credibility determination*

Allen first challenges the ALJ's credibility assessment.  The ALJ's credibility determination is generally entitled to special deference.  *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006).  When an ALJ is faced with evidence that both supports and discounts the alleged symptoms, "the resolution of competing arguments based on the record is for the ALJ, not the court."  *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002).  The Court looks to whether the ALJ considered the entire case record and whether his credibility determination contains specific reasons, supported by the evidence of record.  *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

    Allen makes four arguments that the ALJ's credibility analysis is not supported by substantial evidence.  Allen's first argument is that the ALJ improperly discounted Allen's wrist impairment and osteoarthritis.  However, the ALJ discussed the evidence concerning Allen's wrist impairment and concluded that her degenerative joint disease of the right wrist was a severe impairment.  [Filing No. 14-2, at ECF p. 15.]  For example, the ALJ discussed Allen's November 2012 right wrist x-ray that suggested osteonecrosis.  The ALJ also found degenerative joint disease in Allen's right wrist was a severe impairment.  [Filing No. 14-2, at ECF p. 15.]  In the RFC, the ALJ limited Allen's frequent handling and fingering with her right hand because of her "minimal right wrist abnormalities shown on the x-rays."  [Filing No. 14-2, at ECF p. 20, 23.]  Additionally, the ALJ refuted Allen's allegations of a weakened grip, poor dexterity, and tendency to drop objects with objective medical evidence, like Allen's lack of difficulties with fine or gross movements during her consultative exams and Allen's normal grip strength.  [Filing No. 14-2, at ECF p. 22; Filing No. 14-7, at ECF p. 20.]  The ALJ discussed the full range of motion in Allen's right arm and noted that she reported to a treating source that her activities

3

included crafts, gardening, and some computer use as late as 2012. [Filing No. 14-2, at ECF p. 22; Filing No. 14-7, at ECF pp. 49-53, 56-64, 97.] Thus, the Court agrees with the Commissioner that the ALJ properly addressed Allen's wrist impairment.

Allen's second argument is that the ALJ relied on old daily activity evidence when discounting her current credibility. Yet the record shows that from the time of Allen's onset date until her date last insured Allen drove, cared for her ill mother, picked up her granddaughter, used the computer, performed household chores, and did crafts such as ceramics and jewelry making. [Filing No. 14-2, at ECF p. 21; Filing No. 14-6 at ECF p. 6-9; Filing No. 14-7, at ECF p. 97.] It is therefore difficult for the Court to find the timeframe or the evidence inappropriate.

Allen's third argument is that the ALJ misconstrued her ability to occasionally engage in activities. However, the ALJ did not equate Allen's activities with her ability to perform full-time work. Instead the ALJ used this information to determine the credibility of Allen's allegations. As the Commissioner points out, there is a difference between the ALJ saying, "[t]he claimant can perform this range of activates; therefore she can work," *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013), and an ALJ saying, "[t]he claimant can perform this range of activities, therefore she can do more than she claims, and is not credible." *Pepper*, 712 F.3d at 369. Here, the ALJ found that Allen can do more than she claims based on her activities and concluded she was not credible. Thus, Allen's argument is unavailing.

Finally, Allen argues that the ALJ improperly considered Allen's lack of treatment because she cannot afford additional treatment. Allen points out that the ALJ can undermine her credibility by considering her daily activities, the level of "exertion" necessary for activities, and her ability to engage in activities based on her medical record. *Pepper*, 712 F.3d 351 at 369. The Commissioner contends that the ALJ did not emphasize Allen's lack of treatment when

4

considering her credibility. Instead, the ALJ considered the daily living testimony of Allen and her friend, as well as Allen's medical records, and the effectiveness of her medication. [Filing No. 14-2, at ECF pp. 21-23.]

The record does not support Allen's argument. The ALJ noted that Allen received conservative treatment for her pain. [Filing No. 14-2, at ECF p. 22.] Allen's treating specialist recommended stretching, over-the-counter medication, and possible injections to treat her limping gait and mild effusion and swelling in her right knee. [Filing No. 14-7, at ECF p. 83.] However, the ALJ noted that Allen reported the medication was working and that she did not want injections for her knee pain. [Filing No. 14-2, at ECF p. 22.] Additionally, Allen did not seek or receive treatment from a mental health specialist for her depression and she had her A1C[1] level tested, as late as December 2012 despite financial constraints. [Filing No. 14-2, at ECF p. 17; Filing No. 14-7, at ECF p. 8.] Ultimately, the ALJ found that Allen's diabetes was a severe impairment. [Filing No. 14-2, at ECF p. 15.]

The ALJ also noted that Allen's daily living testimony showed that she was able to do a number of activities that included caring for her mother, picking her granddaughter up from school, and doing crafts. [Filing No. 14-2, at ECF p. 21.] Additionally, while Allen stated that she goes out to eat or shopping once a month, her friend reported that she goes out to eat or shop with Allen three or four times a month. [Filing No. 14-2, at ECF p. 21.] Allen's medical record and clinical findings of treating sources showed some abnormalities of Allen's lumbar spine, knees, and right wrist. However, it failed to show significant neurological compromise or joint dysfunction. [Filing No. 14-2, at ECF p. 21.] Allen's consultative examination report showed

---

[1] "The A1C test is a blood test that provides information about a person's average levels of blood glucose, also called blood sugar, over the last three months." National Institute of Diabetes and Digestive and Kidney Diseases (NIDDK), National Institutes of Health (NH), http://diabetes.niddk.nih.gov/dm/pubs/A1CTest/#1 (last visited November 13, 2015).

that Allen was slow getting off and on the examination table, she could not walk on her heels or squat, and that she had tenderness and spasm in her thoracic region and no reflexes at her elbow, ankle, and knee. [Filing No. 14-2, at ECF p. 22.] However, Allen's gait was steady and Allen maintained full muscle strength and full ranges of motion in all joints. [Filing No. 14-2, at ECF p. 22.] Allen could walk on her toes and tandem walk for a few steps and had normal grip strength and demonstrated normal gross and fine movements with her hands. [Filing No. 14-2, at ECF p. 22.] Also, Allen did not have edema and there were normal findings for Allen's pulmonary, abdominal, cardiovascular, and joints. [Filing No. 14-2, at ECF p. 22.] These were all considerations made by the ALJs when concluding Allen was not credible.

While the ALJ only briefly inquired about Allen's ability to pay for her treatment, any error was harmless. At the hearing, the ALJ asked Allen how she could afford the medical imaging that she received. [Filing No. 14-2, at ECF p. 43.] Allen testified that she did not have insurance from 2007 until 2012 and that after her mother passed away she used her inheritance to seek medical treatment. [Filing No. 14-2, at ECF pp. 42-43.] This is the only time that the ALJ asked Allen about her treatment. However, even though the ALJ should have inquired further into Allen's reasons for not seeking more extensive treatment, any error was harmless in light of the other factors he considered in concluding that Allen was not credible. [Filing No. 14-2, at ECF p. 21.] *See Shramek v. Apfel*, 226F.3d 809, 814 (7th Cir. 2000) (affirming ALJ's decision despite errors because none of them affected the outcome). Therefore, the Court finds no reason to remand under this issue.

    B.    *The ALJ's step four finding*

Allen also takes issue with the ALJ's step four finding. Allen argues that the ALJ erred

when he found that she could return to her past relevant work as a social worker. The ALJ concluded that based on Allen's RFC, she could return to her past relevant work as a medical social worker. [Filing No. 14-2, at ECF p. 24.] The VE testified that limiting Allen to occasional handling and fingering would eliminate her job as a social worker. [Filing No. 14-2, at ECF p. 54.] The VE also testified that modern social workers may be performing a job at greater than sedentary levels. [Filing No. 14-2, at ECF p. 57.] Furthermore, the VE testified that there is prolonged standing and/or going to visit patients. [Filing No. 14-2, at ECF p. 57.]

The record supports the ALJ's conclusion that Allen can return to her past relevant work as a social worker. While the VE's testimony is not ideal, he testified that his determination was consistent with the Dictionary of Occupational Titles. [Filing No. 14-2, at ECF p. 58.] As the Commissioner points out, the ALJ explicitly notes that Allen could perform her past relevant work as generally performed in the DOT, not as actually performed. [Filing No. 14-2, at ECF p. 25.] According to Social Security Ruling 82-61, a claimant is not disabled if they retain "the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." Though Allen argues that the DOT is obsolete based on *Herrmann v. Colvin*, 772 F.3d 1110 (7th Cir. 2014), this is not enough for reversal. The *Herrmann* court stated that the DOT was "an obsolete catalog of jobs" with most of its entries dating back to 1977. *Id*. at 1113. While of course the Court duly notes this observation, the fact is that language was dicta. Therefore this passing observation is not a basis for remand.

    C.    *The ALJ's residual functional capacity*

Allen additionally takes issue with the ALJ's RFC determination. Judicial review of an ALJ's decision rests on whether substantial evidence supports his RFC finding, which takes all relevant evidence into account, including objective medical evidence, treatment, physician's

7

opinions and observations, as well as Plaintiff's own statements about his limitations. 20 C.F.R. § 404.1545. Allen argues that the ALJ's evaluation of her wrist impairment, bladder and bowel incontinence, osteoarthritis, pain, concentration, persistence, and pace was not supported by substantial evidence. Arguments on each of these impairments are discussed as follows.

*1. Wrist impairment evaluation*

Allen argues that the ALJ failed to support his analysis of her wrist impairment with evidence in the record. However, as discussed above, the Court already has upheld the ALJ's credibility determination with regard to Allen's wrist impairment and osteoarthritis. Therefore, the Court finds that the record supports the ALJ's findings that these impairments are not severe.

*2. Bladder and bowel incontinence evaluation*

Allen argues that the record documents her ongoing complaints of incontinence or diarrhea and that her bladder and bowel incontinence is a severe impairment. The ALJ determined that the record did not show significant ongoing complaints of these symptoms. [Filing No. 14-2, at ECF p. 15.] The record reflects that Allen did complain of diarrhea once in 2008 before her onset date, once in 2010, twice in 2012, and once in 2013 after her date last insured. [Filing No. 14-2, at ECF p. 15; Filing No. 14-7, at ECF pp. 5-7, 73.] Allen testified how antidiarrheal medications were not working and that she frequently chose not to eat unless she was at home. [Filing No. 14-2, at ECF p. 51-52.]

The Commissioner argues the ALJ discussed that medical treatment notes failed to document significant or ongoing concerns about diarrhea from Allen's alleged onset date of January 1, 2009, through her date last insured of December 2012. [Filing No. 14-2, at ECF p. 15; Filing No. 14-7, at ECF pp. 5-7, 73.] The record reflects few clinical abnormalities related to bladder or bowel incontinence from January 1, 2009, to December 2012. [Filing No. 14-2, at

8

ECF p. 15; Filing No. 14-7, at ECF pp. 49-52, 56-64, 75-76, 85-95, 82–83; Filing No. 14-8, at ECF pp. 12-13.]  The record also reflects that Allen was able to sit through appointments and testing without needing to be excused to use the restroom, and neither Allen nor her friend claimed that Allen's diarrhea and related symptoms interfered with her ability to perform work. [Filing No. 14-2, at ECF p. 16; Filing No. 14-6, at ECF pp. 5-16, 34-39, 42-46; Filing No. 14-7, at ECF pp. 14 - 26, 49-52, 56 – 64, 66-95; Filing No. 14-8, at ECF pp. 2-14, 28-52.]

The Court thus agrees with the Commissioner and finds no reason to remand on this issue.  The ALJ sufficiently discussed Allen's bladder and bowel incontinence issues given the limited medical evidence.  Based on the treatment notes, the ALJ's conclusion that this is not a severe impairment was reasonable.  The ALJ's opinion therefore will not be disturbed.

   3.  *Osteoarthritis and pain evaluation*

Allen next argues that the ALJ erred by concluding the objective medical evidence did not support the severity of her allegations of pain and osteoarthritis.  The ALJ concluded that Allen had "mild" degenerative changes in her right shoulder, but no "significant ongoing right shoulder symptoms."  [Filing No. 14-2, at ECF p. 16.]  Further, the ALJ found that although there were osteoarthritic changes in her left foot, there were no significant ongoing left foot symptoms.  [Filing No. 14-2, at ECF p. 16.]  The ALJ also determined that even though there are documented abnormalities of the lumbar spine, knees, and right wrist, "this evidence fails to show significant neurological compromise or joint dysfunction to fully support [Allen's] allegations."  [Filing No. 14-2, at ECF p. 21.]

Turning to the evidence, the record shows that an April 2013 x-ray of Allen's spine, following an acute injury, showed multilevel degenerative changes and advanced degenerative disc disease and that a subsequent MRI did not show nerve root impingement or canal

9

compromise.  [Filing No. 14-2, at ECF p. 34; Filing No. 14-8, at ECF pp. 49-50.]  Further, prior to her shoulder injury in April 2013 (after her date last insured), treatment notes do not document right shoulder clinical abnormalities.  [Filing No. 14-2, at ECF p. 16; Filing No. 14-7, at ECF pp. 2-26, 49- 52, 56- 64, 66-95; Filing No. 14-8, at ECF pp. 2 - 14, 28- 52, 58- 63.]  Similarly, following an MRI of Allen's knees in October 2012 that revealed effusion, or fluid build –up, a knee x-ray in April of 2013 showed that the effusion was resolved.  [Filing No. 14-7, at ECF pp. 94-95; Filing No. 14-8, at ECF p. 31.]  There were also normal clinical findings that included no evidence of joint instability in Allen's right knee, no neurological deficits or decreased range of motion in Allen's back, and no signs of impaired balance.  [Filing No. 14-2, at ECF p. 22; Filing No. 14-7, at ECF pp. 75-76, 82-83; Filing No. 14-8, at ECF pp. 12-13.]  In relation to Allen's left foot, there are a lack of clinical abnormalities or functional limitations documented in treatment notes.  [Filing No. 14-2, at ECF pp. 16-17; Filing No. 14-7, at ECF pp. 2-26, 49-52, 56-64, 66-95; Filing No. 14-8, at ECF pp. 2-14, 28-52, 58-63.]  Furthermore, none of Allen's treating physicians documented significant falls or lower back or left knee abnormalities prior to her date last insured.  [Filing No. 14-2, at ECF p. 22.]

As the Commissioner points out, the ALJ's conclusion that Allen's allegations of pain and osteoarthritis were not supported was reasonable.  The ALJ gave some weight to Dr. Jacobs' (consultative examiner) opinion and the state agency reviewing physician's opinions and gave Allen the benefit of the doubt by adding limitations to her range of sedentary work in the RFC analysis.  [Filing No. 14-2, at ECF p. 24; Filing No. 14-7, at ECF pp. 20-21, 27-34, 55.]  The record shows that Dr. Jacobs found normal clinical findings such as Allen's steady gait, full muscle strength, lack of limitation in her ranges of motion, and her normal grip strength and gross fine movements.  [Filing No. 14-2, at ECF p. 22; Filing No. 14-7, at ECF p. 18-22.]

However, Dr. Jacobs' opinion was not supported by his own clinical findings, was internally inconsistent, and he was not able to review records from other sources. [Filing No. 14-2, at ECF p. 24; Filing No. 14-7, at ECF pp. 20-21.] Overall, this evidence does not make the ALJ's conclusion unreasonable.

Furthermore, Allen argues that the ALJ ignored her need for a cane for all ambulation and that it was not addressed in the RFC. [Filing No. 17, at ECF pp. 17-18]. In particular, Allen asserts that the ALJ did not address in the RFC her need for a cane when walking long distances and in bad weather in the RFC. However, the ALJ specifically addressed Allen's cane use and noted that Allen used her cane in bad weather and when walking long distances. [Filing No. 14-2, at ECF pp. 23-24.] The ALJ pointed out that Allen stated she did not use her cane at all times, and no treating or examining source indicated that Allen actually used or required a cane. [Filing No. 14-2, at ECF pp. 23, 46-47.] While Allen cites to *Parker v. Astrue*, 597 F.3d 920 (7th Cir. 2010), this case is distinguishable. Unlike in *Parker,* the ALJ here went into great detail about imagery and clinical findings that did not support the level of pain that Allen alleged. The ALJ properly analyzed Allen's need to use a cane and remand is not appropriate on this issue.

    4.   *Concentration persistence and pace*

Allen also argues that the consultative examiner's report supports a more severe restriction in concentration, persistence, or pace. The report states that Allen's depression interferes with her memory and concentration and is consistent with her poor performance on the Serial 7s exercise. [Filing No. 17, at ECF pp. 225-229.] The ALJ concluded that Allen had only a mild limitation in concentration, persistence, and pace. [Filing No. 14-2, at ECF p. 18.]

The record supports the ALJ's conclusion. While Dr. Davidson's consultative examination states Allen was "slow to perform Serial 7s and made three errors," [Filing No. 14-

11

2, at ECF p. 17; Filing No. 14-7, at ECF p. 25,] the record also shows that there were normal findings during her consultative examination that included her intact memory, good fund of knowledge, intact judgment, her ability to think abstractly, spell a word backwards, perform simple calculations, and repeat seven digits forward and four in reverse order. [Filing No. 14-2, at ECF p. 17; Filing No. 14-7, at ECF p. 24-25.] Additionally, Allen received a GAF rating of 70 from Dr. Davidson, which is indicative of only mild symptoms. [Filing No. 14-2, at ECF p. 17; Filing No. 14-7, at ECF p. 24.] This supports the mild limitation found by the ALJ.

The ALJ's conclusion is also supported by the treatment notes from Allen's primary care physicians that document Allen's subjective complaints of depression and lack of "significant clinical abnormalities such as affective disturbance, memory impairment, cognitive deficits, depressed concentration/attention, or difficulty with social interaction due [to] depressive symptoms." [Filing No. 14-2, at ECF p. 17; Filing No. 14-7, at ECF pp. 49-52, 18-23, 49-52, 56-64, 75-76; Filing No. 14-8, at ECF p. 12-13.] Allen received all of her mental health treatment from her primary care physician and her depression medication was effective in controlling her symptoms. [Filing No. 14-2, at ECF p. 17; Filing No. 14-6, at ECF pp. 15-22, 34-39, 42-46; Filing No. 14-7, at ECF p. 25.] The ALJ points out that the statements from Allen's friend do not support her allegations of trouble reading because her friend states that Allen did not have trouble with attention and concentration or mental tasks. [Filing No. 14-2, at ECF pp. 18-19; Filing No. 14-6, at ECF pp. 11, 29; Filing No. 14-7, at ECF pp. 19, 25.] This further supports the ALJ's conclusion that Allen had only mild limitations.

Allen also argues that the ALJ did not mention her errors during her serial 7s in her consultative examination. However, the ALJ specifically states that Allen was slow to perform

Serial 7s and made three errors, but completed the task. [Filing No. 14-2, at ECF p. 17; Filing No. 14-7, at ECF p. 25.] This argument therefore fails.

Allen additionally argues that the ALJ ignored statements from a Social Security Administration employee that she had problems concentrating and giving useful information. [Filing No. 14-2, at ECF p. 15; Filing No. 16, at ECF p. 3]. However, the ALJ is not required to discuss every piece of evidence. *Pepper*, 712 F.3d at 367. Allen cites to *O'Connor – Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), to support her argument that "[p]roblems with concentration, persistence, and pace must be presented to the vocational expert in vocationally relevant terms." [Filing No. 17, at ECF p. 14]. However that case is distinguishable because O'Connor-Spinner had severe limitations, while here the ALJ concluded that Allen had no significant limitations in concentration, persistence, or pace. [Filing No. 14-2, at ECF pp. 17-19.] As a result, the Court finds that *O'Connor Spinner* does not apply and the ALJ in this case was not required to communicate any limitation in his hypothetical questions to the VE. *See Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) ("All that is required in that the hypothetical question is supported by the medical evidence in the record").

**V.     Conclusion**

For all these reasons, the Court finds that there is no reason to overturn the ALJ's opinion. Accordingly, the Court denies Allen's brief in support of appeal. [Filing No. 17.] The Commissioner's opinion is affirmed.

Dated: 11/16/2015

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution to all counsel of record via CM/ECF.